### PEOPLE *v.* SHOTWELL.

1. CRIMINAL LAW—SUBSTANTIVE OFFENSES—HABITUAL CRIMINALS—
STATUTES.
   The fact that substantive crimes are created and defined in the
   penal code, whereas statutory provisions for second and subse-
   quent offenders are in the code of criminal procedure, indicates
   a legislative intent not to make a separate substantive crime
   out of being a habitual criminal, but, for deterrent purposes,
   intended to augment the punishment for second or subsequent
   felonies (CL 1948, § 750.1 *et seq.*; CLS 1956, § 769.10).

2. SAME—HABITUAL CRIMINALS—ESCAPE FROM PRISON.
   The habitual criminal statute applies to the felony of escape
   from prison, as that felony was not excepted from the appli-
   cation of the habitual criminal law (CL 1948, § 750.193; CLS
   1956, § 769.10).

3. ESCAPE—CONSTRUCTION OF STATUTES—FURTHER IMPRISONMENT—
SENTENCE.
   The section of the penal code creating and defining the felony
   of escape from prison in providing that the prisoner "shall
   after his return to such prison, be imprisoned for as long a
   time as remained unexpired of his former sentence, at the time
   of such breaking, escape or attempt to break or escape, besides
   such further term of imprisonment as aforesaid" (not more
   than 3 years) contemplated "further," not the same, imprison-
   ment for escaping prison, hence, sentence for escape to run
   consecutively to sentence previously imposed was proper, thereby
   deterring escapes from prison (CL 1948, § 750.193).

Petition by Ralph Shotwell for habeas corpus and
mandamus with accompanying certiorari to review
sentence as habitual criminal and secure release.
Submitted July 9, 1957. (Docket No. 70, Calendar

REFERENCES FOR POINTS IN HEADNOTES
[1] 25 Am Jur, Habitual Criminals and Subsequent Offenders § 3
*et seq.*
[2] 25 Am Jur, Habitual Criminals and Subsequent Offenders § 16

No. 47,409.)   Writs denied and sentence affirmed March 7, 1958.

*Thomas M. Kavanagh,* Attorney General, *Samuel J. Torina,* Solicitor General, *Daniel J. O'Hara,* Assistant Attorney General, *Russell E. Noble,* Prosecuting Attorney, Jackson County, for the people.

*Ralph Shotwell, in propria persona.*

VOELKER, J.   On January 8, 1947, the defendant was convicted in the circuit court for Tuscola county of forgery and sentenced to serve a prison term of 7 to 14 years.   He was paroled on November 9, 1951, for a period of 2 years and violated his parole on March 4, 1952, by absconding and disappearing from view.   He was not recaptured until March 15, 1954, when he was returned to prison.   A month later the parole board formally found him guilty of parole violation and continued him on his maximum of 14 years on the forgery sentence.   On August 6, 1954, the defendant escaped prison and was not apprehended until April 18, 1955.   He was thereupon informed against in the circuit court for Jackson county for escaping prison, the information also charging the escape as a second felony under the habitual criminal law of this State.   To this information the defendant pleaded guilty and on May 17, 1955, was sentenced under the habitual criminal statute to serve not less than 1-1/2 or more than 4-1/2 years in State prison, "said sentence to commence at the expiration of his present sentence," that is, at the end of the 7-to-14-year forgery sentence imposed in 1947.

The defendant comes before this Court seeking (1) a review of the legality of his 1955 sentence; (2) a writ of habeas corpus to effect his release from prison because, as he claims, all lawful sentences im-

posed on him by any courts have been fully served; and (3) a writ of mandamus to compel the department of corrections to rescind certain orders it made relating to his confinement.

In support of the relief sought the defendant attacks the validity of his 1955 sentence on 2 grounds: (1) since the "escape" law at the time of his sentence provided a maximum of 3 years imprisonment and no more, the legislature could not have intended that the provisions of the habitual criminal law should apply to such offense; and (2) that in any case the court below exceeded its authority in ordering any term of prison so imposed to commence at the expiration of the old 1947 sentence for forgery.

The second offender statute, CLS 1956, § 769.10 (Stat Ann 1954 Rev § 28.1082), provides:

"A person, who after having been convicted within this State of a felony, or an attempt to commit a felony, or, under the laws of any other State, government or country, of a crime which if committed within this State, would be a felony, commits any felony within this State, is punishable upon conviction as follows: If the subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then such person may be placed on probation or sentenced to imprisonment for a term not more than 1-1/2 times the longest term prescribed for a first conviction of such offense or for any lesser term in the discretion of the court; if the subsequent felony is such that, upon a first conviction the offender might be punished by imprisonment for life then such person may be placed on probation or sentenced to imprisonment for life or for any lesser term in the discretion of the court."

At the time of defendant's escape the crime of escape from prison was punished under the provi-

sions of CL 1948, § 750.193 (Stat Ann 1953 Cum Supp § 28.390), which then provided:

"Any person, being imprisoned in any prison of this State for any term, who shall break prison and escape, or break prison though no escape be actually made, or shall escape, or shall leave said prison without being discharged from said prison by due process of law, or shall attempt to break prison or escape therefrom, shall be guilty of a felony, punishable by further imprisonment for not more than 3 years, and every prisoner who shall actually break prison or escape or attempt to break prison, or attempt to escape as aforesaid, shall after his return to such prison, be imprisoned for as long a time as remained unexpired of his former sentence, at the time of such breaking, escape or attempt to break or escape, besides such further term of imprisonment as aforesaid. Such prisoner who shall break prison or escape or attempt to break prison or attempt to escape as aforesaid, shall be charged with said offense and tried in the courts of the county wherein the administrative offices of the prison may be, to which said prisoner was committed or transferred, at the time of the breaking, escape, or attempt to break or escape. The word 'prison' as used in this section shall include any Michigan State prison, penitentiary, reformatory, State house of correction, the grounds, farms, shops, road camps or places of employment operated by such institution or under control of the officers thereof, or of any police officers of this State: Provided, That escaping from the lawful custody of any guard or prison official or employee while outside the confines of such prison shall be deemed to be a violation of this section."

It appears to be the defendant's contention that since by hypothesis any person who is confined in prison is by definition in our penal code deemed convicted of a felony ("The term 'felony' when used in this act, shall be construed to mean an offense for which the offender, on conviction may be punished

by death, or by imprisonment in State prison." CL 1948, § 750.7 [Stat Ann § 28.197]), and further since it follows that only "convicted felons" may escape from prison that, (1) every escapee by the act of escaping thereby clearly and in all circumstances commits a second felony and, (2) the legislature must be deemed to have clearly had this in mind in setting the maximum punishment of 3 years, and, (3) therefore our habitual criminal statute cannot and should not apply to "escapes," and, (4) therefore the sentencing court was without authority to impose the larger sentence he sought to impose or to make it run consecutively.

While defendant does not cite the case, we note there is some possible comfort for him in some of the things we said in *People* v. *Brown,* 253 Mich 537 (82 ALR 341). Despite that case, however, we further note that substantive crimes are created and defined in our penal code whereas the statutory provisions for second and subsequent offenders are found in our code of criminal procedure. This is some indication, we think, that the legislature did not intend to make a separate substantive crime out of being a habitual criminal but rather, for deterrent purposes, intended to augment the punishment for second or subsequent felonies. Since the legislature did not except escaping prison from our second offender statute we can only infer that it intended the latter statute to apply to all felonies. This we held with little if any discussion in *In re Wilson,* 295 Mich 179.

We think it is also evident from the applicable language of the escape statute itself that the legislature contemplated "further" imprisonment for escaping prison. It said so. We also think it fairly obvious that the legislature thereby sought to provide some sort of deterrent to prison escapes. A contrary view would defeat this objective since many

prisoners could thus escape with both impunity and immunity, since their original sentences might easily devour any interim concurrent escape sentence. In fact the view urged by defendant would tend to put a premium upon the act of escape: If a prisoner made it, all would be well; if he should be caught, no further time would be drawn. We do not think the legislature ever wanted to reach any such result. At least we hesitate to reach such a result by inference.

In view of what we have said the other points raised by defendant need not be discussed. The relief sought by the defendant here must be denied and his sentence below affirmed.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, and EDWARDS, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.