**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Marilyn Kelly          Michael F. Cavanagh
                       Elizabeth A. Weaver
                       Maura D. Corrigan
                       Robert P. Young, Jr.
                       Stephen J. Markman
                       Diane M. Hathaway

FILED AUGUST 13, 2009

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                 No. 137284

JAMIE LYNN LOWE,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This case presents the question whether MCL 333.7413(2), by authorizing a trial court to enhance the sentence of a defendant who is a repeat drug offender to a "term not more than twice the term otherwise authorized," allows the trial court to double *both* the defendant's minimum and maximum sentences. We answer this question in the affirmative. Accordingly, defendant's sentence is affirmed.

## I. BACKGROUND

Defendant pleaded guilty to possession of methamphetamine, MCL 333.7403(2)(b)(*i*), with a sentence enhancement as a repeat drug offender, MCL 333.7413(2). At sentencing, the trial court calculated defendant's minimum sentence range under the sentencing guidelines at 10 to 23 months. Pursuant to

§ 7413(2), the trial court, relying on *People v Williams*, 268 Mich App 416; 707 NW2d 624 (2005), doubled both the minimum and maximum sentences and sentenced defendant to 46 months to 20 years in prison.[1] Defendant did not object to the sentence, but sought leave to appeal in the Court of Appeals, contending that the trial court had erred by doubling his minimum sentence. The Court of Appeals denied leave to appeal in a split decision, and defendant applied for leave to appeal in this Court. We heard oral argument on his application.

## II. STANDARD OF REVIEW

This Court reviews de novo questions of statutory interpretation. *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005).

## III. ANALYSIS

MCL 333.7413(2) provides for enhanced sentencing for defendants convicted of a second or subsequent controlled substance offense:

> Except as otherwise provided in subsections (1) and (3), an individual convicted of a second or subsequent offense under this article may be imprisoned for a term not more than twice the term otherwise authorized or fined an amount not more than twice that otherwise authorized, or both.[2]

---

[1] Possession of methamphetamine typically carries a maximum sentence of 10 years. MCL 333.7403(2)(b)(*i*).

[2] MCL 333.7413(5) provides:

> For purposes of [§ 7413(2)] an offense is considered a second or subsequent offense, if, before conviction of the offense, the offender has at any time been convicted under this article or under

Defendant argues that the phrase "the term otherwise authorized" only refers to the statutory maximum sentence, and that the trial court therefore erred by doubling the minimum sentence guideline range. Consequently, his minimum sentence should have been within the original minimum sentence guideline range of 10 to 23 months. The prosecutor responds that, based on Michigan's indeterminate sentencing scheme,[3] "the term otherwise authorized" refers to the period demarcated by both the minimum and maximum sentences and thus the court correctly doubled *that* "term" by doubling both the minimum and maximum sentences. Obviously, the resolution of the instant dispute rests on the meaning of "the term otherwise authorized."

The Court's responsibility in interpreting a statute is to determine and give effect to the Legislature's intent. *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002). The statute's words are the most reliable indicator of the Legislature's intent and should be interpreted based on their ordinary meaning and the context within which they are used in the statute. *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). Once the Court discerns the Legislature's intent,

---

any statute of the United States or of any state relating to a narcotic drug, marihuana, depressant, stimulant, or hallucinogenic drug.

Defendant had been convicted of at least one prior drug-related offense.

[3] An indeterminate sentence is one the specific duration of which is "not fixed by the court but is left to the determination of penal authorities within minimum and maximum time limits fixed by the court." Black's Law Dictionary (5th ed).

no further judicial construction is required or permitted "because the Legislature is presumed to have intended the meaning it plainly expressed." *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001).

The word "term" is relevantly defined as "the time or period through which something lasts" or "a period of time to which limits have been set." *Random House Webster's College Dictionary* (1997). The "term" that a court is permitted to double in § 7413(2) is the "term otherwise authorized." "[O]therwise authorized" undoubtedly refers to the term provided by law and for which a defendant would be imprisoned absent any enhancement under § 7413(2). Thus, the "term otherwise authorized" is a "period of time," or more specifically a "period of time to which limits have been set," by law.

Because Michigan generally adheres to an indeterminate sentencing scheme,[4] the term for which a defendant would "otherwise" be imprisoned absent an enhancement is not a definite period "through which [imprisonment] lasts." Rather, it is an indefinite "period" that is defined by a minimum and maximum sentence. In the instant case, for example, defendant's unenhanced sentence would likely have been 23 months to 10 years.[5] *This* sentence is best understood

---

[4] Article 4, § 45, of the Michigan Constitution provides that the "legislature may provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences."

[5] This presumes that the trial court would have sentenced defendant at the top of the minimum sentence guideline range just as it sentenced defendant at the top of the enhanced guideline range.

4

as "the term otherwise authorized," because: (a) it identifies the "period of time" that a defendant has to remain in prison as a function of "limits [that] have been set" by the minimum sentence guidelines and the statutory maximum;[6] and (b) this "period of time" has been calculated as "authorized" by law.

That the indeterminate sentence that a defendant typically receives under Michigan law constitutes a "term" is supported by the ordinary parlance used by the courts of this state to describe indeterminate prison sentences. See, e.g., *People v Smith*, 482 Mich 292, 297; 754 NW2d 284 (2008) ("The judge sentenced defendant to three concurrent *terms* of 30 to 50 years' imprisonment . . . .") (emphasis added); *People v Williams*, 475 Mich 245, 248; 716 NW2d 208 (2006) ("[Defendant] was sentenced to a one- to fifteen-year *term* of imprisonment.") (emphasis added); *People v Conyer*, 281 Mich App 526, 527; 762 NW2d 198 (2008) ("Defendant was sentenced to serve consecutive prison *terms* of 30 to 120 months . . . .") (emphasis added); *People v Matuszak*, 263 Mich App 42, 45; 687 NW2d 342 (2004) ("Defendant was sentenced to concurrent prison *terms* of fifteen to thirty years . . . .") (emphasis added). These are only a tiny sampling of the hundreds of decisions in which a defendant's indeterminate sentence range is consistently referred to as a "term."[7] Such ordinary and persistent use of "term" to

---

[6] Defendant would have had to serve no less than 23 months and no more than 10 years.

[7] See the results generated by a Lexis or Westlaw search with the following parameters: sentence! /s "term of".

5

describe this range establishes clearly, in our judgment, that the sentence expressed by reference to both the minimum and maximum sentences constitutes a "term."

Thus, under Michigan's scheme of indeterminate sentencing and the courts' implementation of that scheme, the "term otherwise authorized" is not exclusively the minimum sentence *or* the maximum sentence, but it is the actual indeterminate sentence, which is defined by both the minimum and maximum limits for that sentence. In other words, the "period of time" that a defendant could potentially spend in prison lies somewhere between the minimum and the maximum allowable sentences, and accordingly those sentences operate in tandem to define the "term" for which a defendant has been sentenced. In order to double this "term," a trial court necessarily has to double both the minimum and maximum sentences because both are required to constitute a particular "term."[8] Accordingly, § 7413(2)'s authorization for a trial court to imprison a defendant for a "term not more than twice the term otherwise authorized" signifies that both the minimum and maximum sentences must be doubled to fashion an enhanced sentence that is twice the "term otherwise authorized."[9]

---

[8] We recognize that the statute does not *require* the trial court to double a defendant's sentence; rather, it allows an enhancement up to "not more than twice" the original term. Merely for ease of discussion throughout this opinion, we assume that the trial court's chosen enhancement is twice the original term.

[9] Because § 7413(2) specifically allows the court to double the guideline range, as long as the minimum sentence of the enhanced term is within the

6

Moreover, interpreting "the term otherwise authorized" as the indeterminate sentence created by both the minimum and maximum sentences is the only way to give consistent effect to § 7413(2)'s directive that the defendant be "imprisoned for a term *not more than twice* the term otherwise authorized," when the trial court doubles the "term otherwise authorized." (Emphasis added.) The alternative interpretation suggested by defendant, with which the dissent agrees, creates a risk that this statutory directive will be violated, because defendant would have this Court treat the maximum sentence, but not the minimum sentence, as a "term," even though both sentences, equivalently, constitute periods of time through which defendant's prison time may last.[10] Assume that defendant is sentenced to 23 months to 20 years.[11] It would be impossible for defendant to serve this maximum sentence, because to do so would mean that defendant will have been imprisoned for a term "more than twice the term otherwise authorized," since defendant's interpretation necessarily means that the minimum sentence must be treated as a

doubled range, we conclude that there is also no departure from the guideline range when such a sentence is imposed. See *People v Williams*, 268 Mich App at 430.

[10] As the Court of Appeals noted in *People v Williams*, 268 Mich App at 427, "the clear and unambiguous language of MCL 333.7413(2) does not differentiate or suggest a distinction . . . between maximum and minimum sentences[.]" Accordingly, nothing within the statute can fairly be read to support applying defendant's suggested meaning of "term" to a maximum, but not a minimum, sentence.

[11] This is based on a minimum sentence at the top of the unenhanced guideline range and twice the statutory maximum sentence. Thus, pursuant to defendant's argument, only the maximum sentence here is doubled.

7

"term otherwise authorized." That is, the statute itself would have been violated because defendant's term of imprisonment, i.e., 20 years, would be *10* times longer than the 23-month "term" that defendant asserts is "otherwise authorized," which directly conflicts with the statutory requirement that defendant can only be imprisoned for a term "not more than twice" that "term."

By contrast, when the "term otherwise authorized" is interpreted as the indeterminate sentence designated by both the minimum and maximum sentences, and when both of these sentences are doubled, the defendant will never be imprisoned for a term *10* times the unenhanced term. Using the previous illustration, when both the minimum and maximum sentences are doubled, the 23-month minimum sentence would be doubled to 46 months, the 10-year maximum sentence would be doubled to 20 years, and, accordingly, the "term otherwise authorized," i.e., 23 months to 10 years, would be doubled to 46 months to 20 years. When a trial court considers *both* the minimum and maximum sentences as the "term otherwise authorized," and doubles each of these to form the enhanced term, the enhanced term will never be *10* times as long as the "term otherwise authorized," but will always be exactly twice as long as the unenhanced term.

Finally, the Legislature's authorization for a defendant to be imprisoned for an enhanced term is most reasonably understood to communicate that the defendant should, in fact, serve *more* time-- indeed as a general matter, approximately "twice" as much time-- for his enhanced term than for his unenhanced term. Interpreting § 7413(2) to only allow the trial court to double the

8

defendant's maximum sentence would not in reality ensure that the defendant will serve *any* additional time when sentenced for a second drug offense, because the minimum sentence would remain the same and nothing in an indeterminate sentence prevents a defendant from being released after his minimum sentence has been satisfied. Thus, interpreting § 7413(2) to allow both the minimum and maximum sentences to be doubled is most consistent with what is almost certainly the common understanding that a defendant who has been imprisoned for "twice" his original "term" will serve twice what he would have otherwise served.[12]

Defendant also contends that MCL 777.21 supports his position that the trial court can only double the maximum sentence under MCL 333.7413(2). MCL 777.21 states in relevant part:

> (3) If the offender is being sentenced under section 10, 11, or 12 of chapter IX, determine the offense category, offense class, offense variable level, and prior record variable level based on the underlying offense. To determine the recommended minimum sentence range, increase the upper limit of the recommended minimum sentence range determined under part 6 for the underlying offense as follows:

> (a) If the offender is being sentenced for a second felony, 25%.

> (b) If the offender is being sentenced for a third felony, 50%.

---

[12] Admittedly, under Michigan's indeterminate sentencing scheme, there is no way of knowing how much time a defendant would actually have served under his original sentence. The only certainty is the "term otherwise authorized," and logically the statute authorizes enhancing this known "term."

9

(c) If the offender is being sentenced for a fourth or subsequent felony, 100%.

(4) If the offender is being sentenced for a violation described in section 18 of this chapter, both of the following apply:[13]

(a) Determine the offense variable level by scoring the offense variables for the underlying offense and any additional offense variables for the offense category indicated in section 18 of this chapter.

(b) Determine the offense class based on the underlying offense. If there are multiple underlying felony offenses, the offense class is the same as that of the underlying felony offense with the highest crime class. If there are multiple underlying offenses but only 1 is a felony, the offense class is the same as that of the underlying felony offense. If no underlying offense is a felony, the offense class is G.

Defendant relies on the fact that § 21(3) allows a court to increase a defendant's minimum sentence range, but § 21(4), which applies to sentencing under MCL 333.7413(2), only specifies the various offense variables and offense classes to be used in calculating the guideline range. Therefore, he argues, the Legislature's omission of a minimum sentencing enhancement in MCL 777.21(4) indicates that the Legislature did not intend enhancement of minimum sentences for those offenses.

We find defendant's argument unpersuasive. MCL 777.21(4) simply provides the methodology for a trial court to follow in calculating a defendant's

---

[13] Section 18 refers to MCL 777.18, in which the Legislature expressly provided that the chapter of the Code of Criminal Procedure encompassing the sentencing guidelines applies to felonies under MCL 333.7413(2).

10

minimum sentence guideline range. The lack of a minimum sentence enhancement in that subsection provides no insight into whether MCL 333.7413(2) provides a minimum sentence enhancement, and it is unclear why a lack of a minimum sentence enhancement under MCL 777.21(4) must mean that the Legislature intended MCL 333.7413(2) to also lack a minimum sentence enhancement.[14] The Legislature's silence in MCL 777.21(4) regarding a minimum sentence enhancement cannot preclude the Legislature from providing a minimum sentence enhancement in a separate statute.

## IV. RESPONSE TO DISSENT

The dissent concludes that MCL 333.7413(2) should be interpreted to authorize trial courts to enhance only the maximum sentence for repeat drug offenders because such interpretation avoids a "potential conflict" between § 7413(2) and MCL 769.34(2). *Post* at 6. We agree with the dissent's maxim of interpretation that statutes concerning the "same subject matter must be read together and, when possible, construed harmoniously," *post* at 2, but disagree that this compels the dissent's interpretation. In arriving at this disagreement, we consider the equally well-established maxim of interpretation that "the Legislature is presumed to be aware of judicial interpretations of existing law when passing

---

[14] Contrary to the dissent's assertion that MCL 777.21(4) "does not provide dispositive support" for our interpretation, *post* at 8-9 n 6, this subsection actually *does* support our interpretation when considered specifically in the context of the sentencing guidelines and MCL 333.7413(2). See *infra* at 12-14.

legislation." *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 439-440; 716 NW2d 247 (2006) (quotation marks omitted).

As the dissent correctly notes, *post* at 10, prior to enactment of the sentencing guidelines, MCL 333.7413(2) had been interpreted to allow a trial court to enhance both the minimum and maximum sentences when a defendant's "term," defined by those minimum and maximum sentences, was set by statute. See *People v Williams*, 205 Mich App 229, 230; 517 NW2d 315 (1994). The sentencing guidelines now statutorily authorize both the minimum and maximum sentences for a broad range of criminal offenses, thereby making the "terms" of applicable offenses to which § 7413(2) had *not* previously applied the equivalent of the "terms" of offenses to which § 7413(2) *had* previously applied. Thus, our interpretation of § 7413(2) remains consistent with how it was interpreted in *Williams*; applying that decision to the minimum sentence in the instant case is merely a function of the Legislature's decision to enact sentencing guidelines that established minimum sentences.

The dissent further argues that, because the sentencing guidelines apply to defendant's underlying offense-- the possession of methamphetamine-- the sentence must be within the minimum sentence guideline range as calculated *for that offense*. *Post* at 6-7. However, the Legislature expressly provided that the guidelines specifically apply to sentencing done pursuant to § 7413(2), MCL 777.18, and implemented a specific scheme for when "the offender is being sentenced for a violation [of § 7413(2)]," MCL 777.21(4). Under this scheme, the

12

trial court is directed to calculate the minimum sentence range based on the offense variables and offense class for the underlying felony. MCL 777.21(4). Notably, § 21(4) includes no scoring for prior record variables, even though MCL 333.7413(2) only applies if a defendant has, in fact, committed a prior offense. In light of this, it seems reasonable to conclude that the Legislature, knowing that § 7413(2) allowed an enhancement of the minimum sentence, intended the minimum sentence guideline range to be calculated without respect to the underlying offense's repeat nature. If the Legislature had intended for § 7413(2) to operate only as an enhancement of the maximum sentence, then MCL 777.21(4) would have been unnecessary, and the Legislature would have had no reason to apply the minimum sentence guidelines to sentencing under MCL 333.7413(2). Instead, the Legislature could have simply directed the trial court to calculate the minimum sentence guideline range for the underlying felony as if it were not a subsequent drug offense, and then simply apply § 7413(2) to increase the maximum sentence. Yet, it chose not to do this. Rather, construing the legislatively established procedures for determining the minimum sentence guideline range under § 7413(2), in combination with the recognition that the Legislature was aware that § 7413(2) applied to "terms" that had statutory minimums and maximums prior to the enactment of MCL 769.34(2), suggests that the Legislature intended for the recidivist aspect of the subsequent drug offense to

13

be accounted for by enhancing both the defendant's minimum and maximum sentences pursuant to § 7413(2).[15]

Finally, the dissent contends that we reach our interpretation of "term" through "impressive linguistic gymnastics," without clarifying what these "gymnastics," impressive or otherwise, might be. *Post* at 12 n 10. In fact, we have carefully reviewed the statutory language, and the common understanding of that language, to arrive at our understanding of what constitutes the "term." The Legislature used the phrase "the term otherwise authorized," unadorned by "minimum" or "maximum" or any other modifier. In the dissent's own words, "it is logical that the unmodified word 'term' would be used in order to be applicable to both." *Post* at 12 n 10. More precisely, because the Legislature has not modified "term" with either "minimum" or "maximum," the phrase "the term otherwise authorized" is most reasonably interpreted as the prison term to which a defendant would be sentenced absent any enhancement. See also *supra* n 10. In Michigan, such "term" is indeterminate and is established by reference to both the minimum and maximum sentences.

---

[15] The dissent's suggestion that MCL 777.21(4) "merely demonstrates that the Legislature intended minimum sentences for repeat drug offenders to be calculated under the sentencing guidelines," *post* at 8 n 6, is untenable in light of the dissent's interpretation that MCL 333.7413(2) only affects maximum sentences, and in light of the fact that the Legislature has already provided calculations for drug offenses under the sentencing guidelines.

## V. CONCLUSION

We hold that MCL 333.7413(2) authorizes the trial court to double both the minimum and maximum sentences in order to double defendant's "term otherwise authorized." This understanding gives effect to the Legislature's use of a word, "term," that is ordinarily used to characterize a defendant's indeterminate sentence range, as well as to all other phrases in the statute; it avoids the risk that, contrary to § 7413(2), a defendant's enhanced sentence will be "more than twice" the unenhanced sentence; and it implements the reasonable expectation that a statute authorizing a court to "double" a sentence will ordinarily ensure that, where the trial court acts pursuant to this authorization, a defendant will serve more time in prison under the enhanced sentence than he would have under the unenhanced sentence. Accordingly, the trial court here properly exercised its authority under § 7413(2), and defendant's sentence is affirmed.

Stephen J. Markman
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Diane M. Hathaway

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                                                    No. 137284

JAMIE LYNN LOWE,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

I respectfully dissent from the majority's conclusion that MCL 333.7413(2) permits the sentencing judge to double the offender's minimum and maximum sentences. In my judgment, in the context of the overall sentencing scheme, the provision at issue authorizes a sentencing judge to double only the penalty provided within the controlled substances act, MCL 333.7101 *et seq.*, which, in this case, is only the maximum sentence. Therefore, I would reverse the judgment of the Court of Appeals and remand the case to the trial court for resentencing.

I. INTRODUCTION

The issue in this case is the proper interpretation of the sentencing enhancement provision in the controlled substances act, MCL 333.7413(2), which states in relevant part that "an individual convicted of a second or subsequent offense under [the controlled substances act] may be imprisoned for a term not

more than twice the term otherwise authorized . . . ." The majority holds that, in addition to authorizing the doubling of the maximum sentence provided for the offense in the controlled substances act, this provision authorizes the doubling of the minimum sentence authorized by the sentencing guidelines in the Code of Criminal Procedure. This interpretation, however, creates a conflict between MCL 333.7413(2) and the provision in the Code of Criminal Procedure, MCL 769.34(2), that requires that all minimum sentences fall within the range calculated under the sentencing guidelines absent a departure. I would instead construe the statutory provisions harmoniously to the extent possible and hold that MCL 333.7413(2) authorizes the doubling of only the penalties provided in the controlled substances act and not the minimum sentences provided by the sentencing guidelines.

## II. OVERVIEW OF SENTENCING STATUTES

This case requires reading several sections of statutory code together because, in Michigan, punishment and sentencing for drug offenses are governed by the controlled substances act, which is article 7 of the Public Health Code, and chapters IX and XVII of the Code of Criminal Procedure, MCL 769.1 *et seq.* and MCL 777.1 *et seq.*, respectively. Statutes regulating the same subject matter must be read together and, when possible, construed harmoniously. As this Court has stated, "'[a]ll consistent statutes which can stand together, though enacted at different dates, relating to the same subject . . . are treated prospectively and

2

construed together as though they constituted one act.'" *Wayne Co v Auditor General,* 250 Mich 227, 234; 229 NW 911 (1930) (citation omitted). They are "'to be compared, harmonized if possible, and, if not susceptible of a construction which will make all of their provisions harmonize, they are made to operate together so far as possible consistently with the evident intent of the latest enactment.'"[1] *Id.* (citation omitted).

To begin with, chapter IX of the Code of Criminal Procedure provides the general rules for sentencing, including how to calculate the appropriate minimum and maximum terms under Michigan's indeterminate sentencing scheme. Maximum sentences are governed partly by MCL 769.8(1), which provides that the maximum sentence for an offender's first felony offense punishable by imprisonment in a state prison shall be the "maximum penalty provided by law . . . in all cases except as provided in this chapter [of the Code of Criminal Procedure]." The maximum sentences for drug offenses are provided in the controlled substances act. Minimum sentences are governed by MCL 769.34(2), which clearly requires that the minimum of every sentence be set in accordance with the Code of Criminal Procedure. It states that the minimum sentence for any

---

[1] The members of this Court have expressed differing views regarding the proper approach to statutory interpretation. Although the current justices have disagreed on certain principles of statutory interpretation, there is agreement on the point that statutes should be construed in light of and in harmony with other relevant statutory provisions. See, e.g., *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008); *Baraga Co v State Tax Comm*, 466 Mich 264, 275 n 6; 645 NW2d 13 (2002).

felony included in part 2 of the sentencing guidelines, MCL 777.11 *et seq.*, "shall be within the appropriate sentence range under the version of those sentencing guidelines in effect on the date the crime was committed," except "as otherwise provided" in MCL 769.34(2) or (3).[2] The sentencing guidelines are contained in chapter XVII of the Code of Criminal Procedure and provide the means of calculating minimum sentence ranges. The Code of Criminal Procedure also includes instructions about when the upper limit of those ranges may be enhanced. See MCL 769.34(2); MCL 777.1 *et seq.* The controlled substances act also provides mandatory minimum sentences for some drug offenses, but the Code of Criminal Procedure provides specific instructions about how to calculate minimum sentences when another statute provides for a mandatory minimum sentence.[3] In sum, for every felony to which chapter IX applies, the minimum sentence must be within the range calculated under the sentencing guidelines in chapter XVII of the Code of Criminal Procedure, and every maximum sentence must be the maximum provided by law.

---

[2] MCL 769.34(2) provides an exception in circumstances in which a statute mandates a minimum sentence or a judge expressly departs from the guidelines by following the procedure outlined in MCL 769.34(3).

[3] MCL 769.9(3) provides that for major controlled substance offenses that have a mandatory minimum sentence, the court "shall fix the length of both the minimum and maximum sentence within those specified limits, . . . and the sentence so imposed shall be considered an indeterminate sentence." In addition, MCL 769.34(2)(a) provides that "[i]mposing a mandatory minimum sentence is not a departure [from the sentencing guidelines] under this section."

In addition to the sentences generally permitted for offenses, both the Code of Criminal Procedure and the controlled substances act permit the sentences otherwise authorized to be enhanced for defendants who were convicted of prior offenses. The habitual-offender statutes in the Code of Criminal Procedure, MCL 769.10, 769.11, and 769.12, permit the maximum sentence otherwise allowed to be increased on the basis of the number of previous offenses. In addition, the controlled substances act provides in MCL 333.7413(2) that a person convicted of a subsequent drug offense "may be imprisoned for a term not more than twice the term otherwise authorized . . . ." The sentencing guidelines expressly incorporate MCL 333.7413(2) by listing that statutory provision in MCL 777.18 along with other statutory sections dealing with offenses that are based on an offender's other crimes. The sentencing guidelines instruct that in order to calculate a minimum sentence for a violation listed in MCL 777.18, the trial court should score the offense variables and determine the offense class on the basis of the underlying offense. MCL 777.21(4)(a) and (b).

### III. THE PROPER INTERPRETATION OF MCL 333.7413(2)

The issue in this case arises in light of the enhancement statute in the controlled substances act, MCL 333.7413(2). Defendant was subject to a sentence enhancement under this provision, which provides that, excluding some circumstances not applicable here, "an individual convicted of a second or subsequent offense under [the controlled substances act] may be imprisoned for a term not more than twice the term otherwise authorized . . . ." The majority

5

concludes that the "term otherwise authorized" must refer to the "period of time" between the minimum and maximum sentences, so that MCL 333.7413(2) allows the doubling of both the minimum and maximum sentences otherwise authorized, regardless of where in the statutory scheme the sentences are authorized. The majority therefore upholds the doubling of the minimum sentence authorized by the sentencing guidelines for defendant.

There is, however, a fundamental problem with this approach that the majority fails to address. The majority's interpretation creates a potential conflict between the sentence enhancement provision of the controlled substances act, MCL 333.7413(2), and the requirement of the Code of Criminal Procedure in MCL 769.34(2) that all minimum sentences for applicable felonies *must* fall within the range calculated under the sentencing guidelines. The sentencing statutes in the Code of Criminal Procedure apply in this case. MCL 769.34(2) provides that every minimum sentence for a felony listed in MCL 777.11 *et seq.* *must* fall within the range permitted by the sentencing guidelines, except for certain circumstances provided for in MCL 769.34(2) and (3) that do not apply here.[4] Defendant pleaded guilty of possession of methamphetamine under MCL 333.7403(2)(b)(*i*), which is "a felony punishable by imprisonment for not more

---

[4] MCL 769.34(2)(a) does not apply because the statute under which defendant was sentenced, MCL 333.7403(2)(b)(*i*), does not specify a mandatory minimum sentence. MCL 769.34(3) does not apply because the sentencing judge did not follow the procedure required to depart from the guidelines.

6

than 10 years or a fine of not more than $15,000.00, or both." That offense is listed in MCL 777.13m and, therefore, under MCL 769.34(2), the minimum sentence defendant receives must fall within the range calculated under the sentencing guidelines in chapter XVII. I can see no authority under chapter IX that would exempt defendant from the requirement that the minimum sentence for his offense be within the range calculated under the sentencing guidelines. In my judgment, this is in conflict with the majority's conclusion that MCL 333.7413(2) could be read to authorize the doubling of the minimum sentence allowed by the sentencing guidelines, given that doing so could result in a minimum sentence that is not within the range provided by the guidelines.

As discussed below, I disagree with the majority's interpretation of the statute. But even if one accepts the majority's reading of MCL 333.7413(2) as correct when read in isolation, I think that the provision still must be read in harmony with MCL 769.34(2). Because MCL 769.34(2) uses mandatory language ("the minimum sentence . . . *shall* be within the appropriate sentence range"), while the language in the controlled substances act, MCL 333.7413(2), is merely permissive ("an individual . . . *may* be imprisoned for a term not more than twice the term otherwise authorized"), if the majority's interpretation of MCL 333.7413(2) were correct, I would still interpret MCL 769.34(2) as limiting MCL

333.7413(2).[5]  In my judgment, if the statutes are not harmonized in this manner, the majority's reading of MCL 333.7413(2) irreconcilably conflicts with MCL 769.34(2).[6]

---

[5] Even if the statutes could not be read harmoniously, in *Wayne Co*, this Court stated that if statutes were "'not susceptible of a construction which will make all of their provisions harmonize, they are made to operate together so far as possible consistently with the evident intent of the latest enactment.'" *Wayne Co*, 250 Mich at 234 (citation omitted).  Given that the controlled substances act, including MCL 333.7413(2), predated the sentencing guidelines and the current version of MCL 769.34(2) by 20 years, reading the mandatory language in MCL 769.34(2) to limit MCL 333.7413(2) would be consistent with the "evident intent of the latest enactment" in the sentencing scheme of the Code of Criminal Procedure.

[6] The majority argues that, because generally "the Legislature is presumed to be aware of judicial interpretations of existing law when passing legislation," the Legislature must have intended the reference to "term" in MCL 333.7413(2) to include the new minimum sentencing guidelines. *Ante* at 11-12 (quotation marks omitted).  While this reading could harmonize MCL 333.7413(2) with the sentencing guidelines in a general sense, it does not address the express conflict between MCL 333.7413(2) and the mandatory language in MCL 769.34(2) that the minimum sentence *must* fall within the sentencing range provided in the sentencing guidelines.  If the Legislature had merely stated that the minimum term must be within the range "provided by law," as stated in MCL 769.8(1) with regard to the maximum term, this conflict would not exist.  Instead, however, the Legislature specifically stated that the minimum sentence must fall within the range provided in the guidelines.

The majority further argues that the instructions in MCL 777.21(4) for calculating minimum sentences under MCL 333.7413(2) suggest that "the Legislature intended for the recidivist aspect of the subsequent drug offense to be accounted for by enhancing both the defendant's minimum and maximum sentences pursuant to [MCL 333.7413(2)]." *Ante* at 13-14.  I disagree.  I suggest, as an alternative, that the Legislature's provision of instructions in the sentencing guidelines for how to calculate minimum sentences for offenses under MCL 333.7413(2) merely demonstrates that the Legislature intended minimum sentences for repeat drug offenders to be calculated under the sentencing guidelines.  Nevertheless, I agree with the majority that "MCL 777.21(4) simply

8

I do not find it necessary to reach this somewhat strained approach to reconciling the statutes, however, because I disagree with the majority's interpretation of MCL 333.7413(2). I think that, in the context of the statutory scheme as a whole, the better interpretation of MCL 333.7413(2) is that it only permits the doubling of the penalties provided in the controlled substances act and not the minimum sentencing ranges provided in the Code of Criminal Procedure.

In order to reach what I believe is the proper interpretation of MCL 333.7413(2), it is useful to consider the history of that provision. When the controlled substances act was adopted into law in 1978, there were no statutory sentencing guidelines and no statutorily required minimum sentences for most offenses. See *People v Primer*, 444 Mich 269, 278 n 11; 506 NW2d 839 (1993) (Cavanagh, J., dissenting). To the extent that statutorily provided minimum sentences existed for drug offenses, they were provided within the controlled substances act itself, and the minimum sentences were mandatory. *Id*. In other words, at the time that MCL 333.7413(2) became law, the only "otherwise authorized" terms to which MCL 333.7413(2) could have been referring were those maximum sentences and, for a few offenses, mandatory minimum sentences provided in the controlled substances act. It is clear that at that time, the Legislature anticipated that the controlled substances act would need to be

---

provides the methodology for a trial court to follow in calculating a defendant's minimum sentence guideline range" and does not provide dispositive support for either of our positions. *Ante* at 10-11.

9

construed in conjunction with the sentencing statutes in the Code of Criminal Procedure because the Legislature expressly attempted to reconcile the Code of Criminal Procedure's habitual-offender-enhancement statutes, MCL 769.10, 769.11, and 769.12, with the controlled substances act.[7]  Therefore, when MCL 333.7413(2) was adopted, it could have been read to permit courts to double the maximum and minimum sentences when the controlled substances act mandated both, but to permit courts to double only the maximum sentence when the controlled substances act provided only a maximum.[8]

---

[7] Each of the habitual-offender statutes states that "[i]f the subsequent felony is a major controlled substance offense, the person shall be punished as provided by part 74 of the public health code, 1978 PA 368, MCL 333.7401 to 333.7461."  MCL 769.10(1)(c), 769.11(1)(c), and 769.12(1)(c).

[8] For drug offenses that the controlled substances act provides mandatory minimums for, which are generally the major controlled substance offenses, it may be arguable whether MCL 333.7413(2) would permit doubling of the minimums as well as the maximums.  The history of the relationship between the habitual-offender statutes and mandatory minimums is explained in *Primer*, 444 Mich at 278 n 11 (Cavanagh, J. dissenting):

> "1978 PA 77, which first 'excluded' major controlled substance offenses from the purview of the habitual offender provisions, did not take effect unless and until 1977 HB 4190 was also enacted.  See 1978 PA 77, § 2.  HB 4190 was eventually enacted into law as 1978 PA 147.  See 1978 PA 77 (compiler's note).  1978 PA 147 amended the Controlled Substances Act to provide for the first time mandatory minimum terms of imprisonment for certain drug-related offenses.  The definition of 'major controlled substance offense' in the Code of Criminal Procedure corresponded to the offenses for which the Legislature had in the Controlled Substances Act mandated minimum terms of imprisonment." [Citation omitted.]

10

Twenty years later, in 1998, the Legislature first adopted statutory sentencing guidelines and amended the relevant sentencing provisions in the Code of Criminal Procedure accordingly. It was only then that the potential conflict between MCL 333.7413(2) and MCL 769.34(2) arose. As noted, where the new sentencing guidelines directly conflicted with the controlled substances act, i.e., where the controlled substances act provided mandatory minimums, the Legislature expressly reconciled the provisions. The Legislature did not, however, expressly address how to reconcile MCL 333.7413(2) with the newly created sentencing guidelines,[9] and it therefore falls to this Court to harmonize those provisions in light of the statutory scheme as a whole, if possible.

When considered in this context, the sentencing provisions in the Code of Criminal Procedure that were enacted 20 years later, when the sentencing

---

It may be arguable whether MCL 769.10(1)(c), 769.11(1)(c), and 769.12(1)(c) were intended to permit the mandatory minimums to be doubled, as well as the maximums, given that the habitual-offender statutes themselves otherwise deal with maximum sentences. In light of this history, however, it seems possible that the Legislature intended MCL 333.7413(2) to permit courts to double both the maximum and the minimum when the controlled substances act mandated both. It is further arguable whether the sentencing guidelines would act as a limit on this authority today. In any event, it is not necessary to reach this issue in this case because the statute under which defendant was convicted and sentenced does not provide a mandatory minimum and is not a "major controlled substance offense," as defined in MCL 761.2. Therefore MCL 769.10(1)(c), 769.11(1)(c), and 769.12(1)(c) are not applicable in this case.

[9] This could be because the Legislature did not consider the provisions to conflict, if the Legislature was operating under the assumption that MCL 333.7413(2) only applied to, as it had up until that point, the mandatory minimum and maximum sentences provided in the controlled substances act.

11

guidelines themselves were adopted, are not inconsistent with MCL 333.7413(2).

The plain text of MCL 769.34(2) makes clear that the Legislature contemplated

that, for all sentences to which the guidelines applied, the minimum sentence

should be calculated according to the sentencing guidelines. This intent is not

inconsistent with MCL 333.7413(2) if that provision is read to refer only to, as it

did before the enactment of the sentencing guidelines, the maximum, and perhaps

minimum, penalties expressly provided in the controlled substances act.[10]

Therefore, in order to harmonize the provisions and read the text in light of

the statutory scheme as a whole, I would hold that, under MCL 769.34(2), a repeat

drug offender's minimum sentence must be calculated (and enhanced) using the

sentencing guidelines, as provided in the sentencing statutes in chapters IX and

XVII of the Code of Criminal Procedure. I would hold that, to the extent that it is

---

[10] Using impressive linguistic gymnastics, the majority concludes that the best understanding of MCL 333.7413(2) is that the "term otherwise authorized" is not "exclusively the minimum sentence *or* the maximum sentence, but it is the actual indeterminate sentence, which is defined by both the minimum and maximum limits for that sentence." *Ante* at 6. I agree that this is one possible meaning of the phrase. But there are other possible meanings that I find more plausible in the context of the entire statutory sentencing scheme, particularly given that this provision was enacted 20 years before the Legislature enacted statutory sentencing guidelines within the indeterminate sentencing scheme. Indeed, throughout the statutory scheme, the Legislature refers to a "term" as the maximum (or minimum) amount of time for which an offender may be imprisoned. See, e.g., MCL 333.7416(1)(a) and (3); MCL 333.16177(2)(b). If the Legislature had intended to encompass both the maximum and minimum terms otherwise authorized in the controlled substances act, it is logical that the unmodified word "term" would be used in order to be applicable to both. I do not think that the majority's limited and exclusive understanding of the word "term" best harmonizes MCL 333.7413(2) with the statutory scheme as a whole.

applicable in a given case, MCL 333.7413(2) may only be used to enhance the penalties provided in the controlled substances act. Therefore, in this case, I would hold that it was improper to find that MCL 333.7413(2) authorized the sentencing court to double defendant's minimum sentence.

## IV. CONCLUSION

In my judgment, the majority improperly interprets the words and provisions of MCL 333.7413(2) outside the context of the statutory scheme and achieves an understanding of the statute that is inconsistent with the law as a whole. Therefore, I respectfully dissent. I would reverse the judgment of the Court of Appeals and remand the case to the trial court for resentencing.

Michael F. Cavanagh
Marilyn Kelly

13